Stewart W. BECKETT, et al., Appellants,

v.

AIR LINE PILOTS ASSOCIATION,
Appellee.

No. 94–7130.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 11, 1995.

Decided July 18, 1995.

Rehearing Denied Aug. 24, 1995.

Robert F. Gore, Springfield, VA argued the cause, for appellants.

Jerry D. Anker, Washington, DC, argued the cause, for appellee. On brief were Gary Green, Clay G. Warner, Washington, DC, and Michael E. Abram, New York City.

Before: SILBERMAN, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

Separate concurring opinion filed by Circuit Judge SILBERMAN.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, forty-nine nonunion airline pilots formerly employed by Pan American Airways, Inc. (Pan Am), brought this action to recover pension payments held by the Air Line Pilots Association (ALPA or Union). ALPA has withheld the payments as a set-off against unpaid union assessments levied to support a sympathy strike by ALPA members at Eastern Air Lines, Inc. (Eastern). On cross-motions for summary judgment, the district court granted judgment in favor of ALPA. Because there is a genuine dispute of fact whether the sympathy strike assessment was "germane" to ALPA's collective bargaining activity, we reverse the judgment and remand for further proceedings.

We begin with a brief summary of the undisputed facts.[1] In 1986 Pan Am settled a pension fund grievance filed by ALPA, agreeing to make five annual payments to the Union, beginning in September 1986, for distribution to eligible pilots. In December 1986 two representative plaintiffs filed a class action on behalf of more than 400 affected pilots challenging the method used to distrib-

ute the payments. The litigation ended in 1989 with the entry of a consent decree incorporating a settlement agreement between ALPA and the plaintiff pilots. *Fagerland v. ALPA*, C.A. No. 86–3410, 1989 WL 298428 (D.D.C. Dec. 18, 1989).

In February 1990 ALPA's Pan Am Master Executive Council adopted a resolution providing that "all [Pan Am] pilots who are delinquent in dues, service charge or assessment payments to ALPA ... as of February 20, 1990 ... shall receive their full payment minus all the money owed to ALPA in the form of back dues, service charges and/or assessments." Appendix (App.) 37. ALPA then disbursed the funds from the first four annual payments to all eligible Pan Am pilots but withheld $139,306.95 from the appellant pilots to offset delinquent assessments. In December 1990, after receiving the final installment from Pan Am, ALPA made a second distribution, withholding an additional $22,340.31 from 13 of the appellants. Of the total withheld funds, $100,160.47 was for assessments made to support a 1989 strike by Eastern pilots in sympathy with an economic strike by Eastern machinists belonging to the International Association of Machinists and Aerospace Workers.

The appellant pilots brought this action to recover the withheld funds, alleging causes of action for breach of fiduciary duty, conversion and violation of both the Employee Retirement and Income Security Act (ERISA) and the Railroad Labor Act (RLA). In its answer ALPA asserted, as a defense as well as a counterclaim, that it was entitled to retain the money to offset the unpaid assessments.

By order and memorandum filed February 14, 1992, the District Court granted summary judgment in favor of ALPA on all claims, holding that (1) no cause of action existed under ERISA for withholding payments from the settlement fund; (2) the court lacked subject-matter jurisdiction over the pendent breach of trust claim (which, in any event, was meritless because the *Fager-*

---

1. More detailed recitations of the facts can be found in the district court's and this court's earlier decisions. *See Beckett v. Air Line Pilots Ass'n,* *Int'l,* 783 F.Supp. 657 (D.D.C.1992); *Beckett v. ALPA,* 995 F.2d 280 (D.C.Cir.1993).

*land* decree did not create a trust in the appellants' favor) and (3) ALPA was entitled to withhold the funds to recoup unpaid assessments. *Beckett v. ALPA,* 783 F.Supp. 657 (D.D.C.1992).

On appeal, this court reversed the judgment in part, holding that the district court had retained subject-matter jurisdiction to enforce its 1989 consent decree and that ALPA breached its fiduciary duties as trustee and agent under the decree by diverting to its own use funds deposited for distribution to the pilots as beneficiaries of the settlement fund. *Beckett v. ALPA,* 995 F.2d 280 (D.C.Cir.1993). We then remanded the case "so that the district court may decide in the first instance (1) whether appellee raised a viable counterclaim and, if so, how that issue should be resolved, and (2) the amount of interest due appellants." *Id.* at 289 (order on petition for rehearing).

On remand the district court again granted summary judgment in ALPA's favor, relying on its earlier ruling that the assessments were chargeable against the nonunion pilots and that ALPA was therefore entitled to set them off against the unpaid disbursements. The pilots again appeal, raising three grounds for reversal. We address each ground in turn.

■ First, the appellants assert the district court lacked jurisdiction over ALPA's set-off counterclaim because it raises a "minor dispute," that is one "arising out of the interpretation of collective-bargaining agreements," and must therefore be submitted to arbitration under section 204 of the RLA. *See ALPA v. Eastern,* 863 F.2d 891, 895–96 (D.C.Cir.1988) (quotation omitted).[2] We disagree. Section 204 of the RLA, on which the appellants rely, requires arbitration only of "disputes between an employee or group of employees *and a carrier or carriers.*" 45 U.S.C. §§ 153, 184. The present controversy, however, is between the employees and *the Union.* It in no way affects the now defunct carrier, Pan Am. Thus, section 204 does not govern the dispute and arbitration is not required. *Accord Bagnall v. ALPA,* 626 F.2d 336, 342 (4th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981); *Verville v. International Ass'n of Machinists & Aerospace Workers,* 520 F.2d 615, 618 (6th Cir.1975); *Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 92 (3d Cir.1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).[3]

■ Next, the pilots contend ALPA failed to exhaust its contractual remedies before seeking judicial relief because the Union never sought to have the delinquent pilots discharged pursuant to section 29 of the Pan Am Shop Agreement. We reject this argument as well. Section 29 only authorizes the Union to seek termination of delinquent pilots' employment—it does not provide a means to recover the overdue assessments. Thus, the section offers the Union no real remedy to exhaust. *Cf. Bagnall v. ALPA,* 626 F.2d at 342 (pilot need not exhaust contractual right to contest discharge for dues nonpayment because "such a remedy is tantamount to no remedy at all.").

Finally, the pilots assert ALPA is not entitled to the set-off because the sympathy strike assessments are not authorized under section 2 Eleventh of the RLA. Because the evidence, when viewed most favorably to the pilots, supports this contention, we conclude

---

2. Although the pilots failed to raise the jurisdictional argument below, we must nevertheless consider it on appeal. *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) ("'[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it.") (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)); *Citizens for Abatement of Aircraft Noise, Inc. v. Metropolitan Wash. Airports Auth.,* 917 F.2d 48, 53 (D.C.Cir.1990) ("[I]t is well established that a court of appeals must first satisfy itself of its own jurisdiction, sua sponte if neces-

sary, before proceeding to the merits."), *aff'd,* 501 U.S. 252, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991).

3. ALPA similarly contends the pilots should have exhausted their contractual remedy of arbitration before challenging the assessments in court. *See* App. 67–70. While this position may have merit, to remand for arbitration at this late stage would only yield futile swink. *See Pilots Against Illegal Dues v. ALPA,* 938 F.2d 1123, 1133 (10th Cir. 1991) (concluding "[i]t would be redundant at this point ... to order the matter to be submitted to an arbitrator.").

the judgment must be reversed and the case remanded for further fact-finding.

■ The Supreme Court has interpreted Section 2 Eleventh of the RLA, 45 U.S.C. § 152, Eleventh, to authorize assessments against nonunion employees for expenses "necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues." *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984). Thus, "objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit." *Id.*

In *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), the Supreme Court set out a three-part test for determining which union expenses may be charged nonunion employees: "[C]hargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Id.* at 519, 111 S.Ct. at 1959. Applying this test, the Court concluded that "a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, *even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit.*" *Id.* at 524, 111 S.Ct. at 1961 (emphasis added). Following *Lehnert,* in *Crawford v. ALPA,* 992 F.2d 1295 (4th Cir.1993) (en banc), *cert. denied,* ——— U.S. ———, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993), the Fourth Circuit upheld ALPA assessments against nonunion pilots to support strikes at other airlines, a holding deemed compelled by *Lehnert. See id.* 992 F.2d at 1302 (Wilkinson, J., concurring) ("Judges are in the business of taking language seriously, and the language in *Lehnert* nails the result here to the mast."). We reach a different result under the particular circumstances here.

■ Both the *Lehnert* and the *Crawford* decisions were based largely on the district courts' specific factual findings that the challenged expenses were "germane" to the collective bargaining process. *See Lehnert,* 500 U.S. at 527, 111 S.Ct. at 1963 ("The District Court found these costs to be germane to collective bargaining and similar support services and we decline to disturb that finding."); *Crawford,* 992 F.2d at 1297–99 (describing district court's findings of fact and reasonable inferences therefrom as "essential to an understanding of why ALPA's expenditures are germane to collective bargaining with all the airlines whose pilots it represents"); *see also id.* at 1302–03 (Wilkinson, J., concurring). Here, by contrast, we lack the factual findings necessary to support a similar conclusion. Unlike the lower courts in *Lehnert* and *Crawford,* the district court below issued its ruling on a motion for summary judgment. On appeal from that ruling we must grant the appellants "the benefit of all reasonable evidentiary inferences that can be drawn in [their] favor" and can uphold the summary judgment "only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Sherwood v. Washington Post,* 871 F.2d 1144, 1147–48 (D.C.Cir.1989) (internal quotations omitted). Under this standard, the judgment here cannot stand.

■ The district court found the sympathy strike assessments germane to collective bargaining based on ALPA's "plausible" contention that the strike was part of a comprehensive strategy to strengthen ALPA's own bargaining position at Eastern. 783 F.Supp. at 663–64. The appellant pilots, however, disputed ALPA's rationale for the strike, *see, e.g.* App. 136 ¶¶ 9–11, and credibly so. A sympathy strike differs from other kinds of strikes and a union's participation therein may be intended merely to express solidarity

with the primary striking union rather than to advance its own collective bargaining objectives. *See John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers,* 913 F.2d 544, 549 (8th Cir.1990) (distinguishing economic and sympathy strikes and explaining: " 'A sympathy strike involves two unions; one is striking to force some concession from the employer; the other strikes in sympathy with the first's objectives. Sympathy strikes are a common manifestation of traditional union solidarity.' ") (quoting *Black's Law Dictionary* 1276 (5th ed. 1979)), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). If that was the case here, as may be reasonably inferred, then the sympathy strike assessments were not "germane to collective-bargaining activity" or chargeable to the nonunion pilots. *See Crawford,* 992 F.2d at 1305 (Russell, J., dissenting) ("Plaintiffs stated at oral argument that the strike at Eastern was a sympathy strike in support of a strike by a Machinists' Union unit. If plaintiffs' statement is true, the expenditures on the Eastern controversy would have had no effect on the plaintiffs' collective bargaining and clearly could not have been charged.") (citing *Beck v. Communications Workers,* 776 F.2d 1187, 1212 (4th Cir.1985), *aff'd,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988)). Given this genuine dispute of material fact, we cannot uphold the judgment in ALPA's favor.

For the preceding reasons, we reverse the district court's summary judgment and remand for trial and findings of fact regarding whether the sympathy strike assessments are germane to ALPA's collective bargaining activity. The district court should also consider again whether the sympathy strike assessments satisfy the third prong of the *Lehnert* test. The *Lehnert* plurality found that union lobbying expenses, for example, are nonchargeable because of their substantial burden on dissenters' free speech rights. *See* 500 U.S. at 522, 111 S.Ct. at 1960 ("By

utilizing petitioners' funds for political lobbying and to garner the support of the public in its endeavors, the union would use each dissenter as 'an instrument for fostering public adherence to an ideological point of view he finds unacceptable.' The First Amendment protects the individual's right of participation in these spheres from precisely this type of invasion.") (quoting *Wooley v. Maynard,* 430 U.S. 705, 715, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977)).[4] Given the inherently expressive nature of a sympathy strike, the assessments here may very well be nonchargeable for the same reason. *See Lehnert,* 500 U.S. at 524, 111 S.Ct. at 1961 ("The union surely may not, for example, charge objecting employees for a direct donation or interest-free loan to an unrelated bargaining unit for the purpose of promoting employee rights or unionism generally. Further, a contribution by a local union to its parent that is not part of the local's responsibilities as an affiliate but is in the nature of a charitable donation would not be chargeable to dissenters.").[5]

*So ordered.*

SILBERMAN, Circuit Judge, concurring dubitante:

I join Judge Henderson's opinion up to the point that she reaches the issue whether the assessments to support the ALPA strike at Eastern were "germane" to collective bargaining. And, although I do not object to the remand for findings as to the actual relationship between the strike at Eastern and the dynamics of collective bargaining in appellants' unit, I doubt that further findings will provide much illumination on the issue presented in this case. Judge Henderson is certainly correct that the Fourth Circuit in *Crawford* purported to rely heavily on the district court's factfinding and that the Supreme Court in *Lehnert* also referred to the facts as found by the district judge. Nevertheless, whether an expenditure is to be con-

---

**4.** Four justices dissenting in *Lehnert* would have disallowed the assessments because the underlying expenses were not "incurred for the conduct of activities in which the union owes a duty of fair representation to the nonmembers being charged." 500 U.S. at 558–60, 111 S.Ct. at 1979–80.

**5.** The district court here acknowledged that "requiring the nonunion pilots in the Pan Am bargaining unit to support financially a strike by Eastern pilots in sympathy for the machinists at Eastern does significantly burden free speech." 783 F.Supp. at 665.

sidered "germane" is not merely a question of its factual relatedness to the union's bargaining efforts on behalf of the objecting members' bargaining unit, because even certain classes of clearly related activities have been deemed "non-germane." Our primary problem is that, when assessments have been levied for expenditures relating to activities at another bargaining unit, it is impossible to detect in the Supreme Court cases—particularly *Lehnert*—a principled basis for distinguishing expenditures that are "germane" from those that are not. And findings of fact are only useful if a court has available a legal framework into which to place those findings.

The Supreme Court has held that non-members cannot be charged for general union organizing costs, for lobbying activities, or for litigation expenses not directly associated with their collective bargaining unit (the latter since the Supreme Court understands such litigation to be "political"). *See Ellis v. Brotherhood of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 519–22, 528, 111 S.Ct. 1950, 1959–60, 1963, 114 L.Ed.2d 572 (1991) (plurality holding); *id.* at 555, 111 S.Ct. at 1977 (Scalia, J., concurring in the judgment). Non-members can be assessed, however, for their share of expenses associated with the chargeable bargaining activities of affiliates—"even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit," *Lehnert*, 500 U.S. at 524, 111 S.Ct. at 1961—for convention costs (including reasonable social expenditures), for strike preparations, and for the costs of union publications reporting on otherwise chargeable union activities. *See Ellis*, 466 U.S. at 448–56, 104 S.Ct. at 1892–96; *Lehnert*, 500 U.S. at 524–31, 111 S.Ct. at 1961–65.

It is beyond my powers of comprehension to understand why litigation expenses incurred by the union in another unit on a matter that relates to collective bargaining—perhaps even an interpretation of a collective bargaining agreement identical to that of the objecting employees' unit—are not thought "germane," but certain strike preparations are. Perhaps it is the Supreme Court's unique perception of litigation that leads it to describe that process as "political." I only wish the matter seemed as clear to me as it does to Judge Wilkinson, who said in *Crawford* that "the language in *Lehnert* nails the result to the mast."

I recognize the analytical difficulty in drawing a line between those expenses that, if charged to unwilling agency shop employees, would offend the First Amendment, and those thought to be germane to collective bargaining. But surely the Court can give us some principles on which to base our decisions. In the absence of such, I cannot quarrel with the majority's decision to remand for factfinding. The district judge will at least be able to determine just how related these particular expenditures were to collective bargaining in appellants' unit.