**AMERICABLE INTERNATIONAL, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF NAVY, et al., Defendants.**

**Civil Action No. 94–2096 (JR).**

United States District Court, District of Columbia.

Feb. 8, 1996.

Warren B. Rudman, Robert P. Parker, Carl W. Hampe, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, DC, G. Lindsay Simmons, Jackson & Kelly, Washington, DC, for Plaintiff.

Keith V. Morgan, Assistant U.S. Attorney, Washington, DC, for Defendants.

## *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiff holds a cable franchise for the Naval Air Station in North Island, California, and seeks to enjoin the government defendants from soliciting bids for the construction of a satellite/master antenna cable system (SMATV) that would serve the Bachelor Quarters at the naval base. This memorandum sets forth the reasons why the government's motion to dismiss or for summary judgment must be granted.

### Facts

In 1986 the parties entered into a franchise agreement for the construction and operation of a cable television system at various naval facilities in southern California, including the Naval Air Station at North Island. By agreement of the parties, and in compliance with federal law, the franchise was non-exclusive. Americable duly constructed the cable system and now operates it, serving cable subscribers throughout the franchise area.

The Bachelor Quarters (BQ) at NAS North Island provides temporary housing to bachelor officers and other military personnel. The BQ is wired for Americable service along with the rest of the base. Basic cable service is provided to all residents of the BQ and paid for from a common fund. Americable solicits subscriptions to its "premium" channel service from individual BQ tenants.

In August 1994, the Navy issued an invitation for bids for the design and construction of a SMATV system that would provide a competing cable television service at the BQ. The proposed SMATV service would be owned by the Navy and would become the provider of basic cable television, but it would offer fewer channels than the Americable service and no premium channels. Americable's wiring would remain, and Americable could continue to solicit subscriptions for premium service from BQ individuals.

Americable's lawsuit claims that the solicitation for bids, and the contemplated SMATV, would violate its cable franchise, the Cable Act, Defense Department procurement regulations, and the First and Fifth Amendments.

### Jurisdiction

The Administrative Procedure Act waives the sovereign immunity of the United States with respect to claims for relief other than money damages, provided the relief sought is not expressly or impliedly forbidden by another statute that grants consent to suit. 5 U.S.C. § 702. Actions seeking declaratory relief or specific performance in contract cases are impliedly forbidden by the Tucker Act, 28 U.S.C. 1491(a)(1), *see Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C.Cir. 1986). Counts I, II and IV of the complaint allege violations of Americable's franchise agreement with the Navy and of the duty of good faith and fair dealing, for which plaintiff seeks declaratory and injunctive relief. The APA does not act as a waiver of sovereign immunity with respect to those claims, *Transohio Savings Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C.Cir.1992), and they must be dismissed for want of subject matter jurisdiction.

Jurisdiction of the remaining counts of the complaint is established by 28 U.S.C. § 1331.

### Cable Act Claims

At the center of Americable's complaint is the allegation that the SMATV will "cherry pick" the most lucrative portion of its market. This, Americable argues, violates the Cable Communications Policy Act of 1984, as amended, 47 U.S.C. §§ 521–559 (the "Cable Act").

Americable argues first that the Cable Act establishes a "requirement" that a franchise "provide universal service throughout the franchise area." Its authority for that position is 47 U.S.C. § 541(a)(4)(A), which re-

quires that a franchising authority (here the Navy) allow an applicant's cable system "a reasonable period of time to become capable of providing cable service to all households in the franchise area...." That language on its face contains no "requirement" of "universal service," of course. Americable's strained argument is at odds with the purpose of the Cable Act, which is to promote competition, and of the amendment in question, which protects the interests of new franchise applicants and not incumbents like Americable. *See* S.Rep. 92, 102d Conf., 2d Sess.1991, *reprinted in* [1992] 4 U.S.Code Cong. & Admin.News 1133, 1225. The additional provision cited by plaintiff, 47 U.S.C. § 541(a)(3), does not enhance the argument. That provision deals with the practice of excluding low income areas from cable service coverage and is designed to protect the interests of the consuming public, not those of the cable service provider. Thus even if Americable had standing to complain about "cherry picking" under the Cable Act, which is doubtful, *see Animal Legal Defense Fund, Inc. v. Espy,* 23 F.3d 496, 503 (D.C.Cir.1994), this particular claim must be dismissed for failure to state a claim upon which relief can be granted.

### Procurement Regulation Claims

■ The Navy is required by its own procurement regulations to "contract out" those services that need not be performed by military personnel, if a private contractor can provide the service at lower cost, and to conduct a cost assessment before it brings existing commercial services "in house." 32 C.F.R. §§ 169.4(b), 169.4(d) (1988). Americable argues that the proposed SMATV system is an effort to bring "in-house" the provision of cable service and that the Navy has not properly compared the cost of SMATV to that of Americable's service.[1]

This claim, too, fails to state a claim upon which relief can be granted. Defense Department regulations define "in house commercial activities"—proposed activities that would trigger the cost comparison require-

ments—as those performed by military personnel. 32 C.F.R. § 169.3 (1988). In this case, the Navy has solicited bids for the construction of the SMATV system from private contractors. Plaintiff has not alleged that the Navy is considering building the system itself using military personnel, and the Navy has not decided to conduct "in house commercial activities" within the meaning of the Departmental regulations.

### First Amendment Claim

■ Americable next contends that the SMATV solicitation violates its First Amendment rights by threatening to cut off its access to the residents of the BQ. The contention is without merit.

It is undisputed that, while the BQ's bulk subscription to Americable's service may not be renewed, Americable's transmission facilities and solicitation rights will remain undisturbed. In particular, premium channels will not be offered through the SMATV system, and individual BQ residents will remain free to subscribe to them through Americable's service. Rendering Americable's service less attractive in the marketplace by providing to residents a subsidized alternative does not give rise to First Amendment injury. *See AMSAT Cable v. Cablevision of Connecticut,* 6 F.3d 867 (2d Cir.1993); *Warner Cable Communications, Inc. v. City of Niceville,* 911 F.2d 634, 638 (11th Cir.1990).

Defendants would be entitled to dismissal at this point even if the proposal were to displace Americable entirely at the BQ. Plaintiff does not allege, and there is no record evidence to suggest, that the BQ is a public forum. *See Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Like the proprietor of a boarding house or hotel, the Navy purchases cable service for the benefit of the BQ's temporary occupants. The Navy's purchasing decision may be based on any reasonable criteria, as long as it is not motivated by hostility to the viewpoint expressed by a competing cable provider. *See Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S.Ct.

---

1. Failure to perform a cost comparison pursuant to these regulations is reviewable under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq., see CC Distributors, Inc. v. United States,* 883

F.2d 146 (D.C.Cir.1989). Americable's APA claim based on 10 U.S.C. § 2462, however, is not subject to judicial review. *Id.*

**4**

948, 955–56, 74 L.Ed.2d 794 (1983). Plaintiff's own complaint recites that the Navy has solicited bids in the belief that SMATV service will be cheaper than Americable's service. That reason, in the absence of allegations of discrimination against Americable based on the content of its programming, defeats plaintiff's First Amendment claim.[2]

**Due Process Claim**

■ Americable argues, finally, that the Navy's decision to provide SMATV service at the BQ amounts to a termination of its franchise agreement, triggering due process protections. This claim is defeated by the language of the franchise agreement itself, which provides that "this agreement [does not] preclude the installation and operation of future Government or privately owned cable TV systems," Franchise Agreement ¶ 8(d), and entitles subscribers to use government-owned master antenna television systems without interference from Americable, Franchise Agreement ¶ 8(a). The Navy's exercise of its option under the agreement to provide a competing cable service does not amount to a deprivation of plaintiff's property interest in the franchise.

An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, it is this 7th day of February, 1996, hereby **ORDERED** that defendants' motion to dismiss, or in the alternative, for summary judgment [# 22] is **granted,** and that this action be, and it is hereby, **dismissed.**

---

**2.** Americable also alleges the Navy's SMATV solicitation violates equal protection because the Navy's conduct "bears directly on Americable's fundamental right to free speech." Because I find no violation of plaintiff's speech rights, defendants are entitled to summary judgment on this claim as well. The SMATV project is rationally related to the legitimate goal of reducing the costs of cable service at the BQ. *See Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981); *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).