**AMERICABLE INTERNATIONAL, INC., Appellant,**

v.

**DEPARTMENT OF NAVY, et al., Appellees.**

**AMERICABLE INTERNATIONAL, INC., Appellant,**

v.

**DEPARTMENT OF NAVY, et al., Appellees.**

**AMERICABLE INTERNATIONAL, INC., Appellant,**

v.

**DEPARTMENT OF NAVY, et al., Appellees.**

**AMERICABLE INTERNATIONAL, INC., Appellant,**

v.

**DEPARTMENT OF NAVY, et al., Appellees.**

Nos. 96–5050, 96–5131, 96–5132 and 96–5133.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 1997.

Decided Nov. 21, 1997.

As Amended Jan. 30, 1998.

Robert P. Parker argued the cause for the appellant. Warren B. Rudman, Carl W.

Hampe and G. Lindsay Simmons, Washington, DC, were on brief.

Keith V. Morgan, Assistant United States Attorney, argued the cause for the appellees. Mary Lou Leary, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, Washington, DC, were on brief.

Before: WALD, HENDERSON and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, Circuit Judge:

Americable International, Inc. (Americable), a cable television operator, appeals the district court's summary judgments in four actions to enjoin the Department of the Navy (Navy) from operating an "in-house" cable television system in four Navy-owned communities previously served by Americable. In each action, Americable asserted violations of federal procurement law, the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 *et seq.*, (Cable Act) and the First Amendment to the United States Constitution. For the reasons set out below, we affirm the district court's judgments on the Cable Act and First Amendment claims and reverse the judgments on the procurement claims.

In 1986 Americable won a competitive bid to build and maintain a cable system serving various Navy facilities in the San Diego area under a nonexclusive franchise agreement. Under the agreement Americable provided service to a number of Navy residential complexes within the franchise area and received compensation therefor from common funds derived from each facility's rental payments. In 1988 service was extended, at the Navy's request, to its nearby Marine Corps Recruit Depot (MCRD).

In 1991 the Navy solicited bids for development of a satellite/master antenna television system (SMATV) to provide cable service to its enlisted quarters at MCRD.[1] The

1. "[A]n SMATV system typically receives a signal    from a satellite through a small satellite dish

new system began service in 1992 and Americable's group subscriptions at the affected MCRD residences were canceled at that time. The Navy later decided to contract for similar SMATV service at the "bachelor quarters," high-density residential facilities housing temporarily assigned unmarried Navy personnel, located at three other San Diego area sites: North Island, the Long Beach Naval Station and the San Diego Naval Submarine Base, all of which were then served by Americable's system. No contracts have yet been entered for those locations.[2]

■ Americable filed four actions in the district court seeking declaratory, injunctive and mandamus relief on the grounds that the conversion to SMATV at each of the four locations violated, *inter alia,* federal procurement regulations, the Cable Act and Americable's First Amendment right of free speech. By order and memorandum opinion filed February 8, 1996 the district court granted the Navy's motion to dismiss or in the alternative for summary judgment in the action challenging the cable conversion at North Island. *Americable Int'l, Inc. v. United States Dep't of the Navy,* 931 F.Supp. 1 (D.D.C.1996). On April 17, 1996 the court issued unpublished memorandum opinions and judgments granting similar motions in the other three actions. Americable filed appeals in each action. Because the parties submitted evidence and statements of material facts pursuant to Local Rule 108(h)[3] and because the district court expressly cited the absence of record evidence in its North Island memorandum opinion, 931 F.Supp. at 3, we construe the district court's decision in that action as having granted summary judgment. In addition, as the district court dismissed the complaints in the other three actions "for each of the reasons set forth in" the North Island opinion,[4] we construe the other three decisions in like manner.[5] Accordingly, in reviewing all four decisions, we "must grant the appellant[ ] the benefit of all reasonable evidentiary inferences that can be drawn in [its] favor and can uphold the sum-

---

located on a rooftop and then retransmits the signal by wire to units within a building or complex of buildings." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 311, 113 S.Ct. 2096, 2100, 124 L.Ed.2d 211 (1993) (citing *In re Definition of a Cable Television System,* 5 F.C.C. Rcd. 7638, 7639 (1990)).

2. In fact, it appears that no SMATV systems will be installed at these locations and that the actions involving them are therefore moot. *See* Appellant's Br. at 10 n.2 (acknowledging Long Beach Naval Base has closed and Americable has acquired cable system at Submarine Base); Appellee's Br. at 5 (asserting Navy has abandoned plans for SMATV system at North Island).

3. Rule 108(h) provides in part:
   Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.
   D.D.C. R. 108(h).

4. *See Americable Int'l, Inc. v. United States Dep't of the Navy,* No. 95cv00282, mem. order at 1–2 (D.D.C. filed Apr. 17, 1996); *Americable Int'l,*

*Inc. v. United States Dep't of the Navy,* No. 95cv002114, mem. order at 1–2 (D.D.C. filed Apr. 17, 1996); *Americable Int'l, Inc. v. United States Dep't of the Navy,* No. 95cv002214, mem. order at 1–2 (D.D.C. filed Apr. 17, 1996).

5. We therefore reject Americable's assertion that we should review the district court's decisions as dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Given that the motions were in the alternative for summary judgment and that the parties had the opportunity to submit and submitted materials in support and in opposition, it is not unfair to Americable to treat the decisions as summary judgments. *See Tele–Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334 (D.C.Cir. 1985) ("[T]he reviewing court must assure itself that summary judgment treatment would be fair to both parties in that the procedural requirements of the applicable rules were observed."). In any event, we would also affirm dismissal of the Cable Act and First Amendment claims under Rule 12(b)(6) because, as our discussion below illustrates, the allegations of the complaint, construed in the light most favorable to Americable, reveal that Americable can prove no set of facts that would entitle it to relief on the two claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other ground by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

mary judgment only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Beckett v. Air Line Pilots Ass'n,* 59 F.3d 1276, 1279 (D.C.Cir.1995) (internal quotations omitted). We apply this standard to each of Americable's claims in turn.

■ First, Americable asserts that the Navy's SMATV conversion at each location violates statutory and regulatory procurement requirements. The Congress has directed that

> the Secretary of Defense shall procure each supply or service necessary for or beneficial to the accomplishment of the authorized functions of the Department of Defense (other than functions which the Secretary of Defense determines must be performed by military or Government personnel) from a source in the private sector if such a source can provide such supply or service to the Department at a cost that is lower (after including any cost differential required by law, Executive order, or regulation) than the cost at which the Department can provide the same supply or service.

10 U.S.C. § 2462(a). To implement this mandate the Department of Defense has promulgated a regulation requiring:

> When performance by a commercial source is permissible, a comparison of the cost of contracting and the cost of in-house performance shall be performed to determine who shall provide the best value for the Government, considering price and other factors included in the solicitation.

32 C.F.R. § 169a.4(d). Americable asserts that the Navy violated both the statute and the regulation by failing to conduct a cost comparison before deciding to establish an "in-house" cable system. The Navy maintains that it never moved the cable service "in-house" but simply entered into private contracts for the installation and operation of the SMATV system. If the Navy is correct, there may well be no genuine issue of material fact with respect to the applicability § 2462 to this case. On the other hand, Americable contests the Navy's characterization of the conversion, asserting that substantial Navy personnel will be required to

operate and maintain the programing delivery system now operated and maintained by Americable. Unfortunately, neither we nor the district court are in a position to decide as a matter of law whether there is a genuine dispute here because the district court did not permit Americable any discovery before issuing its ruling. Although Americable cited the need for discovery, *inter alia,* to "find out what the nature of the service is going to be," Tr. of 2/27/95 hearing at 48; *see also id.* at 30–31, 36, the district court granted summary judgment without permitting any. As a consequence, there is no evidence in the record as to who will perform those functions that may be necessary to "operate" and "maintain" the new system and any inferences that exist must be construed in the appellant's favor.

Under these circumstances, it was inappropriate for the district court to grant summary judgment without first giving Americable a chance to conduct discovery to determine precisely what services Defense Department personnel would be performing after acquiring the SMATV system and whether those services were sufficiently substantial to invoke the mandate of § 2462(a). As we have stated before, summary judgment ordinarily "is proper only after the plaintiff has been given adequate time for discovery." *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1380 (D.C.Cir.1988); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (summary judgment appropriate only "after adequate time for discovery"); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (plaintiff must have "a full opportunity to conduct discovery"). If after discovery the district court determines that the relevant services are no more than those asserted by the Navy in this court, summary judgment may well be in order. If something more turns out to have been envisioned, more difficult line-drawing may be required. But neither is appropriate, or possible, at this stage of the proceedings.

■ Americable next asserts that the Navy's conversion to SMATV violates section

541(a)(1) and section 541(a)(4)(A) of the Cable Act, which, Americable maintains, were intended to prevent cable providers from "cherry-picking" only the most lucrative portions of a cable franchise area. We do not agree with Americable's construction of either provision's meaning. Section 541(a)(4)(A) does not, as Americable contends, require that cable providers extend service "throughout the franchise area," *see* Appellant's Br. at 31, but instead imposes a specific duty on *the franchising authority* that "[i]n awarding a franchise, [it] shall allow the applicant's cable system a reasonable period of time to become capable of providing cable service to all households in the franchise area." 47 U.S.C. § 541(a)(4)(A). There is no evidence, and Americable has never claimed, that the Navy afforded it too little time to develop its cable system throughout the San Diego franchise area. Nor can we accept Americable's contention that the Navy violated section 541(a)(1) of the Cable Act, which provides that "a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise." *Id.* § 541(a)(1). Americable neither alleged nor demonstrated that the Navy did either. Accordingly, there was no violation of the plain language of either cited provision.

■ Finally, Americable asserts that the conversion to SMATV infringes its First Amendment right "to provide cable service within its franchise area" because it "foreclose[s] Americable's opportunity to speak to a portion of the audience within its franchise area." Appellant's Br. at 36. In *City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986), the United States Supreme Court recognized that the provision of cable television service "plainly implicate[s] First Amendment interests" because "through original programming or by exercising editorial discretion over which stations or programs to include in its repertoire" a cable operator

"seeks to communicate messages on a wide variety of topics and in a wide variety of formats." 476 U.S. at 494, 106 S.Ct. at 2037. Americable seizes on this language and on our opinion in *Tele–Communications of Key West, Inc. v. United States*, 757 F.2d 1330 (D.C.Cir.1985), (*TCI*) to argue that the SMATV installation works a violation of its First Amendment rights. Neither case helps Americable's challenge. In *TCI* we acknowledged the First Amendment interests implicated in the provision of cable television services and thus held that the plaintiff cable operator, which had been providing cable service for some years at a Florida Air Force base, had stated a First Amendment claim sufficient to withstand a motion to dismiss by alleging that the Air Force had awarded a new exclusive franchise to another operator and denied the plaintiff access to "facilities essential to operating on the base." 757 F.2d at 1335. Here, by contrast, Americable has produced no evidence to show that the SMATV installation will impair its ability to deliver programming anywhere in the franchise area. In fact, the Navy's evidence affirmatively established the contrary. *See* Affidavit of Joseph F. Calcara (Naval Housing Acquisitions Division Director in San Diego, California) at 1 (stating "Americable's cable and rights of way are unaffected by the SMATV system installation" and "Americable remains free to offer a programming/cost structure and solicit individual and government subscribers at North Island without restriction").

Because the installation and operation of SMATV will not prevent Americable from providing its cable service throughout the franchise area, we conclude that Americable has failed to establish a First Amendment injury arising from the Navy's proposed actions. *See Warner Cable Communications, Inc. v. City of Niceville*, 911 F.2d 634, 636–41 (11th Cir.1990). Americable . asserted only that the SMATV service would "displace Americable entirely as the provider of cable TV services" because it will no longer receive bulk subscription payments from the

Navy for providing basic cable service. Hermanowski Declaration at 4, 6. Americable remains free, however, to market its cable service in whatever packages it chooses to individual residents. Whether the residents choose to purchase Americable's service is beyond the scope of our inquiry. The First Amendment does not require that the Navy itself pay for Americable's service or ensure that it is free from economic competition. *See Warner Cable Communications, Inc.,* 911 F.2d at 637–38; *cf. Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 544–45, 103 S.Ct. 1997, 2000–01, 76 L.Ed.2d 129 (1983) (government not required to subsidize constitutionally protected lobbying through tax exemption or deductions).

For the preceding reasons, we affirm the district court's dismissals of the Cable Act and First Amendment claims and reverse the court's dismissals of the procurement law claims.

*So ordered.*