United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 6, 1997 Decided November 21, 1997 

 No. 96-5050

 Americable International, Inc., 

 Appellant

 v.

 Department of Navy, et al., 

 Appellees

 No. 96-5131

 Americable International, Inc., 

 Appellant

 v.

 Department of Navy, et al., 

 Appellees

 ---------


 No. 96-5132

 Americable International, Inc., 

 Appellant

 v.

 Department of Navy, et al., 

 Appellees

 No. 96-5133

 Americable International, Inc., 

 Appellant

 v.

 Department of Navy, et al., 

 Appellees

 Appeals from the United States District Court 

 for the District of Columbia 

 (No. 94cv02096) 

 (No. 95cv00282) 

 (No. 95cv02214) 

 (No. 95cv02114)

 Robert P. Parker argued the cause for the appellant. 
Warren B. Rudman, Carl W. Hampe and G. Lindsay Sim-
mons were on brief.

 Keith V. Morgan, Assistant United States Attorney, argued 
the cause for the appellees. Mary Lou Leary, United States 
Attorney, and R. Craig Lawrence, Assistant United States 
Attorney, were on brief.


 Before: Wald, Henderson and Garland, Circuit Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Karen LeCraft Henderson, Circuit Judge: Americable 
International, Inc. (Americable), a cable television operator, 
appeals the district court's summary judgments in four ac-
tions to enjoin the Department of the Navy (Navy) from 
operating an "in-house" cable television system in four Navy-
owned communities previously served by Americable. In 
each action, Americable asserted violations of federal procure-
ment law, the Cable Communications Policy Act of 1984, 47 
U.S.C. ss 521 et seq., (Cable Act) and the First Amendment 
to the United States Constitution. For the reasons set out 
below, we affirm the district court's judgments on the Cable 
Act and First Amendment claims and reverse the judgments 
on the procurement claims.

 In 1986 Americable won a competitive bid to build and 
maintain a cable system serving various Navy facilities in the 
San Diego area under a nonexclusive franchise agreement. 
Under the agreement Americable provided service to a num-
ber of Navy residential complexes within the franchise area 
and received compensation therefor from common funds de-
rived from each facility's rental payments. In 1988 service 
was extended, at the Navy's request, to its nearby Marine 
Corps Recruit Depot (MCRD).

 In 1991 the Navy solicited bids for development of a 
satellite/master antenna television system (SMATV) to pro-
vide cable service to its enlisted quarters at MCRD.1 The 
new system began service in 1992 and Americable's group 
subscriptions at the affected MCRD residences were canceled 
at that time. The Navy later decided to contract for similar 
SMATV service at the "bachelor quarters," high-density resi-

__________
 1 "[A]n SMATV system typically receives a signal from a satellite 
through a small satellite dish located on a rooftop and then retrans-
mits the signal by wire to units within a building or complex of 
buildings." FCC v. Beach Communications, Inc., 113 S. Ct. 2096, 
2100 (1993) (citing In re Definition of a Cable Television System, 5 
F.C.C. Rcd. 7638, 7639 (1990)).


dential facilities housing temporarily assigned unmarried 
Navy personnel, located at three other San Diego area sites: 
North Island, the Long Beach Naval Station and the San 
Diego Naval Submarine Base, all of which were then served 
by Americable's system. No contracts have yet been entered 
for those locations.2

 Americable filed four actions in the district court seeking 
declaratory, injunctive and mandamus relief on the grounds 
that the conversion to SMATV at each of the four locations 
violated, inter alia, federal procurement regulations, the Ca-
ble Act and Americable's First Amendment right of free 
speech. By order and memorandum opinion filed February 
8, 1996 the district court granted the Navy's motion to 
dismiss or in the alternative for summary judgment in the 
action challenging the cable conversion at North Island. Am-
ericable Int'l, Inc. v. United States Dep't of the Navy, 931 
F. Supp. 1 (D.D.C. 1996). On April 17, 1996 the court issued 
unpublished memorandum opinions and judgments granting 
similar motions in the other three actions. Americable filed 
appeals in each action. Because the parties submitted evi-
dence and statements of material facts pursuant to Local 
Rule 108(h) 3 and because the district court expressly cited 

__________
 2 In fact, it appears that no SMATV systems will be installed at 
these locations and that the actions involving them are therefore 
moot. See Appellant's Br. at 10 n.2 (acknowledging Long Beach 
Naval Base has closed and Americable has acquired cable system at 
Submarine Base); Appellee's Br. at 5 (asserting Navy has aban-
doned plans for SMATV system at North Island).

 3 Rule 108(h) provides in part:

 Each motion for summary judgment shall be accompanied by a 
 statement of material facts as to which the moving party 
 contends there is no genuine issue, which shall include refer-
 ences to the parts of the record relied on to support the 
 statement. An opposition to such a motion shall be accompa-
 nied by a separate concise statement of genuine issues setting 
 forth all material facts as to which it is contended there exists a 
 genuine issue necessary to be litigated, which shall include 
 references to the parts of the record relied on to support the 
 statement.


the absence of record evidence in its North Island memoran-
dum opinion, 931 F. Supp. at 3, we construe the district 
court's decision in that action as having granted summary 
judgment. In addition, as the district court dismissed the 
complaints in the other three actions "for each of the reasons 
set forth in" the North Island opinion,4 we construe the other 
three decisions in like manner.5 Accordingly, in reviewing all 
four decisions, we "must grant the appellant[ ] the benefit of 
all reasonable evidentiary inferences that can be drawn in 
[its] favor and can uphold the summary judgment only where 
there is no genuine issue of material fact, and, viewing the 
evidence in the light most favorable to the nonmoving party, 
the movant is entitled to prevail as a matter of law." Beckett 
v. Air Line Pilots Ass'n, 59 F.3d 1276, 1279 (D.C. Cir. 1995) 

__________
D.D.C. R. 108(h).

 4 See Americable Int'l, Inc. v. United States Dep't of the Navy, 
No. 95cv00282, mem. order at 1-2 (D.D.C. filed Apr. 17, 1996); 
Americable Int'l, Inc. v. United States Dep't of the Navy, No. 
95cv002114, mem. order at 1-2 (D.D.C. filed Apr. 17, 1996); Ameri-
cable Int'l, Inc. v. United States Dep't of the Navy, No. 95cv002214, 
mem. order at 1-2 (D.D.C. filed Apr. 17, 1996).

 5 We therefore reject Americable's assertion that we should re-
view the district court's decisions as dismissals for failure to state a 
claim under Federal Rule of Civil Procedure 12(b)(6). Given that 
the motions were in the alternative for summary judgment and that 
the parties had the opportunity to submit and submitted materials 
in support and in opposition, it is not unfair to Americable to treat 
the decisions as summary judgments. See Tele-Communications 
of Key West, Inc. v. United States, 757 F.2d 1330, 1334 (D.C. Cir. 
1985) ("[T]he reviewing court must assure itself that summary 
judgment treatment would be fair to both parties in that the 
procedural requirements of the applicable rules were observed."). 
In any event, we would also affirm dismissal of the Cable Act and 
First Amendment claims under Rule 12(b)(6) because, as our dis-
cussion below illustrates, the allegations of the complaint, construed 
in the light most favorable to Americable, reveal that Americable 
can prove no set of facts that would entitle it to relief on the two 
claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on 
other ground by Davis v. Scherer, 468 U.S. 183 (1984).


(internal quotations omitted). We apply this standard to each 
of Americable's claims in turn.

 First, Americable asserts that the Navy's SMATV conver-
sion at each location violates statutory and regulatory pro-
curement requirements. The Congress has directed that

 the Secretary of Defense shall procure each supply or 
 service necessary for or beneficial to the accomplishment 
 of the authorized functions of the Department of Defense 
 (other than functions which the Secretary of Defense 
 determines must be performed by military or Govern-
 ment personnel) from a source in the private sector if 
 such a source can provide such supply or service to the 
 Department at a cost that is lower (after including any 
 cost differential required by law, Executive order, or 
 regulation) than the cost at which the Department can 
 provide the same supply or service.

10 U.S.C. s 2462(a). To implement this mandate the Depart-
ment of Defense has promulgated a regulation requiring:

 When performance by a commercial source is permissi-
 ble, a comparison of the cost of contracting and the cost 
 of in-house performance shall be performed to determine 
 who shall provide the best value for the Government, 
 considering price and other factors included in the solici-
 tation.

32 C.F.R. s 169a.4(d). Americable asserts that the Navy 
violated both the statute and the regulation by failing to 
conduct a cost comparison before deciding to establish an "in-
house" cable system. The Navy maintains that it never 
moved the cable service "in-house" but simply entered into 
private contracts for the installation and operation of the 
SMATV system. If the Navy is correct, there may well be no 
genuine issue of material fact with respect to the applicability 
s 2462 to this case. On the other hand, Americable contests 
the Navy's characterization of the conversion, asserting that 
substantial Navy personnel will be required to operate and 
maintain the programing delivery system now operated and 
maintained by Americable. Unfortunately, neither we nor 


the district court are in a position to decide as a matter of law 
whether there is a genuine dispute here because the district 
court did not permit Americable any discovery before issuing 
its ruling. Although Americable cited the need for discovery, 
inter alia, to "find out what the nature of the service is going 
to be," Tr. of 2/27/95 hearing at 48; see also id. at 30-31, 36, 
the district court granted summary judgment without permit-
ting any. As a consequence, there is no evidence in the 
record as to who will perform those functions that may be 
necessary to "operate" and "maintain" the new system and 
any inferences that exist must be construed in the appellant's 
favor.

 Under these circumstances, it was inappropriate for the 
district court to grant summary judgment without first giving 
Americable a chance to conduct discovery to determine pre-
cisely what services Defense Department personnel would be 
performing after acquiring the SMATV system and whether 
those services were sufficiently substantial to invoke the 
mandate of s 2462(a). As we have stated before, summary 
judgment ordinarily "is proper only after the plaintiff has 
been given adequate time for discovery." First Chicago Int'l 
v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988); see 
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (summary 
judgment appropriate only "after adequate time for discov-
ery"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 
(1986) (plaintiff must have "a full opportunity to conduct 
discovery"). If after discovery the district court determines 
that the relevant services are no more than those asserted by 
the Navy in this court, summary judgment may well be in 
order. If something more turns out to have been envisioned, 
more difficult line-drawing may be required. But neither is 
appropriate, or possible, at this stage of the proceedings.

 Americable next asserts that the Navy's conversion to 
SMATV violates section 541(a)(1) and section 541(a)(4)(A) of 
the Cable Act, which, Americable maintains, were intended to 
prevent cable providers from "cherry-picking" only the most 
lucrative portions of a cable franchise area. We do not agree 
with Americable's construction of either provision's meaning. 
Section 541(a)(4)(A) does not, as Americable contends, require 


that cable providers extend service "throughout the franchise 
area," see Appellant's Br. at 31, but instead imposes a specific 
duty on the franchising authority that "[i]n awarding a 
franchise, [it] shall allow the applicant's cable system a rea-
sonable period of time to become capable of providing cable 
service to all households in the franchise area." 47 U.S.C. 
s 541(a)(4)(A). There is no evidence, and Americable has 
never claimed, that the Navy afforded it too little time to 
develop its cable system throughout the San Diego franchise 
area. Nor can we accept Americable's contention that the 
Navy violated section 541(a)(1) of the Cable Act, which pro-
vides that "a franchising authority may not grant an exclusive 
franchise and may not unreasonably refuse to award an 
additional competitive franchise." Id. s 541(a)(1). America-
ble neither alleged nor demonstrated that the Navy did 
either. Accordingly, there was no violation of the plain 
language of either cited provision.

 Finally, Americable asserts that the conversion to SMATV 
infringes its First Amendment right "to provide cable service 
within its franchise area" because it "foreclose[s] America-
ble's opportunity to speak to a portion of the audience within 
its franchise area." Appellant's Br. at 36. In City of Los 
Angeles v. Preferred Communications, Inc., 476 U.S. 488 
(1986), the United States Supreme Court recognized that the 
provision of cable television service "plainly implicate[s] First 


Amendment interests" because "through original program-
ming or by exercising editorial discretion over which stations 
or programs to include in its repertoire" a cable operator 
"seeks to communicate messages on a wide variety of topics 
and in a wide variety of formats." 476 U.S. at 494. Ameri-
cable seizes on this language and on our opinion in Tele-
Communications of Key West, Inc. v. United States, 757 
F.2d 1330 (D.C. Cir. 1985), (TCI) to argue that the SMATV 
installation works a violation of its First Amendment rights. 
Neither case helps Americable's challenge. In TCI we ac-
knowledged the First Amendment interests implicated in the 
provision of cable television services and thus held that the 
plaintiff cable operator, which had been providing cable ser-
vice for some years at a Florida Air Force base, had stated a 
First Amendment claim sufficient to withstand a motion to 
dismiss by alleging that the Air Force had awarded a new 
exclusive franchise to another operator and denied the plain-
tiff access to "facilities essential to operating on the base." 
757 F.2d at 1335. Here, by contrast, Americable has pro-
duced no evidence to show that the SMATV installation will 
impair its ability to deliver programming anywhere in the 
franchise area. In fact, the Navy's evidence affirmatively 
established the contrary. See Affidavit of Joseph F. Calcara 
(Naval Housing Acquisitions Division Director in San Diego, 
California) at 1 (stating "Americable's cable and rights of way 
are unaffected by the SMATV system installation" and "Am-
ericable remains free to offer a programming/cost structure 
and solicit individual and government subscribers at North 
Island without restriction").

 Because the installation and operation of SMATV will not 
prevent Americable from providing its cable service through-
out the franchise area, we conclude that Americable has failed 
to establish a First Amendment injury arising from the 
Navy's proposed actions. See Warner Cable Communica-
tions, Inc. v. City of Niceville, 911 F.2d 634, 636-41 (11th Cir. 
1990). Americable asserted only that the SMATV service 
would "displace Americable entirely as the provider of cable 
TV services" because it will no longer receive bulk subscrip-
tion payments from the Navy for providing basic cable ser-


vice. Hermanowski Declaration at 4, 6. Americable remains 
free, however, to market its cable service in whatever pack-
ages it chooses to individual residents. Whether the resi-
dents choose to purchase Americable's service is beyond the 
scope of our inquiry. The First Amendment does not require 
that the Navy itself pay for Americable's service or ensure 
that it is free from economic competition. See Warner Cable 
Communications, Inc., 911 F.2d at 637-38; cf. Regan v. 
Taxation With Representation of Washington, 461 U.S. 540, 
544-45 (1983) (government not required to subsidize constitu-
tionally protected lobbying through tax exemption or deduc-
tions).

 For the preceding reasons, we affirm the district court's 
dismissals of the Cable Act and First Amendment claims and 
reverse the court's dismissals of the procurement law claims.

 So ordered.