Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 17, 2003        Decided August 12, 2003

No. 02-5192

INFORMATION HANDLING SERVICES, INC.,
APPELLANT

v.

DEFENSE AUTOMATED PRINTING SERVICES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 98cv02796)

———

*David T. Ralston, Jr.* argued the cause for appellant. With him on the briefs was *John G. DeGooyer*.

*W. Mark Nebeker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

———

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Information Handling Services, Inc. brought suit alleging that the Department of Defense violated statutory and regulatory requirements by developing and maintaining an Internet-accessible database for the dissemination of government documents, without first determining whether the private sector could do so at lower cost. The district court dismissed the complaint for lack of standing and, in the alternative, granted summary judgment. We reverse.

I

The Defense Automated Printing Services (DAPS) is the component of the Department of Defense (DoD) that is responsible for managing, maintaining, and distributing over 50,000 documents relating to unclassified military specifications and standards. DAPS lists the documents in the Department of Defense Index of Specifications and Standards (DoDISS). The Department uses those documents (hereinafter "DoDISS documents") to describe the products or services that it wishes to obtain, and private contractors and government agencies rely on them in responding to DoD solicitations.

Beginning in the late 1970s, the Department sought to automate its management of DoDISS documents. It eventually created an official electronic index of military standardization documents, known as the Acquisition Streamlining and Standardization Information System (ASSIST). ASSIST, however, did not contain the text of the documents, which, until the late 1990s, were distributed to government agencies, defense contractors, and the general public only in hard copy.

Information Handling Services, Inc. (IHS) is a commercial publisher of government and industrial standards and specifications. For many years, the company has obtained DoDISS documents from the government and made them available to

its customers on a subscription basis. In the late 1980s, IHS developed a searchable electronic database of DoDISS documents, called the DoDISS Plus Index, which the company provided on CD–ROM to subscribing customers. Users of this "value-added" database could search for particular specifications or standards by document number, title, subject, or keyword. Like users of ASSIST, however, IHS customers who identified their desired document still had to obtain the full-text version from IHS or the Department in hard copy. Then, in the early 1990s, IHS produced a CD–ROM database of full-text DoDISS documents that it linked to its DoDISS Plus Index, allowing a subscriber to search for and immediately print a particular military specification or standard. The company has continued to develop and market this product, and current subscribers can access IHS' database on CD–ROM or through the Internet, and can retrieve full-text DoDISS documents in various electronic formats, including portable document file (PDF) versions.

The present dispute concerns the Defense Department's development of what the plaintiff describes as a document search and retrieval system similar to the enhanced DoDISS Plus Index. The government's database was developed in the mid–1990s. On October 1, 1998, an Internet version called ASSIST On–Line became fully operational, allowing users to search for and immediately retrieve current PDF versions of DoDISS documents.

On November 17, 1998, IHS filed suit against various officials and components of the Department of Defense, including DAPS (hereinafter "DAPS" or "the Department"), in the United States District Court for the District of Columbia. IHS' complaint, brought under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, contained two causes of action. First, IHS asserted that DAPS had developed and was continuing to maintain ASSIST On–Line without first determining through a bona fide cost comparison that it could do so at lower cost than the private sector, as required by 10 U.S.C. § 2462 and the relevant DoD procurement regulation, 32 C.F.R. § 169.4. In the complaint's second count, IHS contended that, by allowing users to access ASSIST On–Line

free of charge, DAPS was violating the requirement of 10 U.S.C. § 2328 that, if "required to release technical data under" the Freedom of Information Act, the agency must recoup from the person requesting the documents "all reasonable costs attributable to search, duplication, and review." IHS sought a declaratory judgment as well as injunctive relief barring DAPS from "developing, marketing, implementing, distributing, and selling" ASSIST On–Line without first undertaking an appropriate cost comparison and recovering the government's costs.

On April 18, 2002, after denying IHS' requests to take discovery, the district court dismissed plaintiff's first count on the ground that IHS lacked standing to assert it. In the alternative, the court granted summary judgment against the plaintiff on that count, as well as on the second count. *See Information Handling Servs., Inc. v. Defense Automated Printing Servs.*, No. 98–2796 (D.D.C. Apr. 18, 2002). IHS filed a timely notice of appeal.

## II

Before turning to the legal analysis, we pause for a moment to clarify the scope of the issues on appeal. As just mentioned, IHS' complaint was stated in two counts: the first premised on alleged violations of § 2462 and the Department's procurement regulation, and the second on an alleged violation of § 2328. The plaintiff's appellate briefs directly addressed only the first count, and at oral argument IHS confirmed that it was not appealing the court's grant of summary judgment on the second. We therefore restrict our review to the claimed violations of § 2462 and the regulation.

Section 2462 states as follows:

§ 2462. Contracting for certain supplies and services required when cost is lower

(a) In general.—Except as otherwise provided by law, the Secretary of Defense shall procure each supply or service necessary for or beneficial to the accomplishment of the authorized functions of the Department of Defense

(other than functions which the Secretary of Defense determines must be performed by military or Government personnel) from a source in the private sector if such a source can provide such supply or service to the Department at a cost that is lower . . . than the cost at which the Department can provide the same supply or service.

(b) Realistic and fair cost comparisons.—For the purpose of determining whether to contract with a source in the private sector for the performance of a Department of Defense function on the basis of a comparison of the costs of procuring supplies or services from such a source with the costs of providing the same supplies or services by the Department of Defense, the Secretary of Defense shall ensure that all costs considered . . . are realistic and fair.

10 U.S.C. § 2462. The relevant procurement regulation, 32 C.F.R. § 169.4, states in pertinent part:

(b) *Achieve Economy and Quality through Competition*. Encourage competition with the objective of enhancing quality, economy, and performance. When performance by a commercial source is permissible, a comparison of the cost of contracting and the cost of in-house performance shall be performed to determine who shall provide the best value for the Government. . . .

(d) *Rely on the Commercial Sector*. DoD Components shall rely on commercially available sources to provide commercial products and services except when required for national defense, when no satisfactory commercial source is available, or when in the best interest of direct patient care. DoD Components shall not consider an in-house new requirement, an expansion of an in-house requirement, conversion to in-house, or otherwise carry on any [commercial activities] to provide commercial products or services if the products or services can be procured more economically from commercial sources.

32 C.F.R. § 169.4(b), (d); *see also id.* § 169a.4(c)-(d).

The first count of the plaintiff's complaint alleged that DAPS violated these statutory and regulatory requirements by (1) developing, and (2) maintaining ASSIST On–Line without undertaking a cost comparison study to determine whether DAPS could "develop and maintain a digitized database for DoDISS documents more economically than commercial sources." Compl. ¶ 29. At argument before this court, IHS abandoned its claim regarding the *development* of ASSIST On–Line. Plaintiff's counsel made clear that, although IHS still believes that DAPS violated 10 U.S.C. § 2462 and 32 C.F.R. § 169.4 by developing the product in-house, it does not contend that the statute or regulation requires the government to discard a product that it has already developed — even if it was developed in violation of the law. Accordingly, because ASSIST On–Line was developed during the mid–1990s and became operational in 1998 — and hence was completed before the plaintiff filed suit — IHS has withdrawn any claim to relief for the development of the website and associated database.

This leaves only one claim remaining for our consideration: IHS' charge that DAPS is currently violating § 2462 and the Department's regulation by *maintaining* ASSIST On–Line without considering whether the private sector can do so at lower cost. The district court dismissed that claim on the ground that IHS lacked standing to raise it. In the alternative, the court granted summary judgment against IHS on the merits. We consider the plaintiff's standing in Part III, and, because we find that IHS does have standing to raise the claim, we consider the district court's grant of summary judgment in Part IV.

## III

As the Supreme Court has explained, the "question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To satisfy the requirements of Article III of the Constitution, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of

the defendant, and that the injury will likely be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In addition, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Id.* (internal quotation marks omitted). The prudential principle relevant here is that, for a plaintiff to have standing, its "grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id.*

We review the district court's grant of DAPS' motion to dismiss for lack of standing de novo. *See American Fed'n of Gov't Employees v. Rumsfeld*, 321 F.3d 139, 142 (D.C. Cir. 2003). In analyzing whether IHS has standing at the dismissal stage, we must assume that IHS states a valid legal claim, *see Warth*, 422 U.S. at 500; *Louisiana Energy & Power Auth. v. FERC*, 141 F.3d 364, 367–68 (D.C. Cir. 1998); *American Fed'n of Gov't Employees v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982), and "must accept the factual allegations in the complaint as true," *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002); *see Sierra Club v. EPA*, 292 F.3d 895, 898–99 (D.C. Cir. 2002).[1]

The dispute over IHS' standing principally centers on whether it is suffering "injury in fact." IHS' complaint avers that DAPS' unlawful failure to solicit bids from the private sector to maintain ASSIST On–Line "harm[s] commercial vendors, including IHS, . . . as it denies them the opportunity

---

[1] Because IHS has abandoned its claim regarding the development of ASSIST On–Line, we do not discuss standing issues relating to that claim. Those include the district court's determination that IHS lacked standing to raise the development claim because "at the time the DoD began to develop . . . its system to provide electronic copies of DoDISS documents . . . plaintiff did not have a commercially-available product or service with which to compare [DoD's] costs," *Information Handling*, slip op. at 5. They also include the government's argument that IHS lacks standing because DAPS did not produce the product in-house but rather used other private-sector vendors, and because IHS failed to bid on the contracts that led to the development of ASSIST On–Line.

to demonstrate that they can provide the instant products and services more economically." Compl. ¶ 74. Such a claim of lost contracting opportunities is ordinarily sufficient to establish injury in fact. *See CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989).

The district court concluded that IHS nonetheless lacked standing because it "does not now offer a service which is procured by DoD." *Information Handling*, slip op. at 5. There are two concepts embedded in that conclusion. The first — that IHS does not offer (or is not capable of offering) the same service provided by ASSIST On–Line — is a question of fact. The plaintiff avers that "such products and services are now available more economically from IHS and other commercial sources," and that "IHS's DoDISS Plus Index products and services are a 'commercially available source' of essentially the same products and services as offered in" ASSIST On–Line. Compl. ¶¶ 13, 48.[2] For purposes of deciding a motion to dismiss, a court must take those allegations as true, and the district court erred in not doing so.

The second concept implicit in the district court's conclusion is that IHS is not suffering "injury in fact" because DAPS is not "procur[ing]" the service of maintaining and operating the website, but rather is continuing to provide that service itself. In a related vein, the government argues that § 2462 only compels DAPS to consider comparative costs when it takes a private-sector service "in-house" — i.e., when DAPS decides to develop a product or perform a service that it had previously purchased from the private sector — or when it develops a new product or service. Section 2462 is inapplicable here, the government insists, because making DoDISS documents available to the public is a service that DoD has historically undertaken on its own. And because § 2462 is inapplicable, the government concludes, the interest that IHS asserts is not "legally protected." *See* DAPS Br. at

---

[2] At oral argument before this court, counsel for IHS made clear that its contention was that it could provide the same ongoing services as ASSIST On–Line at lower variable cost than the government, and that in making this calculation it was not including the government's sunk development costs on DAPS' side of the ledger.

24–27; *see also Defenders of Wildlife*, 504 U.S. at 560 (stating that the "injury in fact" element of standing requires the "invasion of a legally protected interest").

The problem with this argument is that at the motion to dismiss stage, a plaintiff's non-frivolous contention regarding the meaning of a statute must be taken as correct for purposes of standing. *See Louisiana Energy & Power Auth.*, 141 F.3d at 368; *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997). Were that not the case, we would effectively be deciding the merits under the guise of determining the plaintiff's standing. Here, IHS' contention is that § 2462 requires the government to consider procuring from the private sector services that it performs in-house, even if the services neither are new nor were once contracted out. The fact that the government is not "procur[ing]" the maintenance service is thus the gravamen of IHS' claim, not a ground for finding that IHS lacks standing to assert it. As we said in rejecting a similar argument in *CC Distributors*, "[t]o note that 'no procurement process was ever invoked' begs the question of whether the relevant statutes and regulations require [DoD] to undertake the . . . cost comparison procedures of that procurement process, *i.e.*, whether they create a conditional right to compete." 883 F.2d at 151.[3] If we assume, as we must at this stage, that IHS has read the statute correctly, then DAPS' conduct has indeed "inva[ded] . . . a legally protected interest," and the plaintiff has standing to raise its claim. *Defenders of Wildlife*, 504 U.S. at 560.

The district court also determined that IHS had not established injury in fact "because . . . DoD does not provide DoDISS documents to the public less economically than plaintiff does." *Information Handling*, slip op. at 5. But as we have said, the complaint expressly alleges that "such products and services are now available more economically from IHS and other commercial sources." Compl. ¶ 13. Because we must take that allegation as true, this ground for finding a

---

[3] The statutory provision that the court analyzed in *CC Distributors*, § 1223 of the National Defense Authorization Act for Fiscal Year 1987, Pub. L. No. 99–661, 100 Stat. 3816, 3977 (1986), was later codified without substantive change as 10 U.S.C. § 2462. *See* Act of July 19, 1988, Pub. L. No. 100–370, 102 Stat. 840.

lack of standing must also fail. *See Sturm, Ruger*, 300 F.3d at 871; *Sierra Club*, 292 F.3d at 898–99.

The government offers a potpourri of additional arguments in support of the district court's determination that IHS lacked standing. First, it contends that the inability of IHS to bid on a maintenance contract causes the plaintiff no injury to a legally protected interest because "no one has the 'right' to a government contract." DAPS Br. at 24. This contention is readily dismissed, because it is precisely the same argument that the government tendered and this court rejected in *CC Distributors*: "[A] plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit*," we said, "even though the plaintiff may not be able to show that it was certain to receive that benefit had it been accorded the lost opportunity." 883 F.2d at 150. IHS' claim that it has lost § 2462's "statutorily conferred opportunity to compete for a contract" to maintain the website is "sufficient to confer standing." *Id.*

Second, the government argues that IHS has no statutory right to force the government to buy its CD–ROM database of DoDISS documents, rather than to operate a website. But if IHS ever claimed such a right in the district court, it does not do so here. Instead, the plaintiff contends that if given the opportunity, it would bid to operate a website that would provide users with precisely the same services that the government now provides but at lower cost to the government. This is a factual dispute that cannot be resolved on a motion to dismiss.

Finally, the government contends that IHS lacks prudential standing because its claim does not come within the zone of interests protected by § 2462. According to the government, IHS is merely trying to protect the near-monopoly it used to enjoy. But that is not the nature of IHS' claim here. The complaint alleges that IHS can provide the same service that the government does at lower cost to the taxpayers. Compl. ¶¶ 13, 48, 74. There can be no question that such a claim comes within the zone of interests of a statute that directs the Secretary of Defense to procure a service from a private-

sector source "if such a source can provide such . . . service to the Department at a cost that is lower . . . than the cost at which the Department can provide the same . . . service." 10 U.S.C. § 2462.[4]  As the court said in *CC Distributors*:

> We can hardly say that the interest of a private firm in competing for a Defense Department contract is only "marginally related" to the goal of improving efficiency. . . .   [T]he plaintiffs' interest in obtaining the opportunity to compete for [this] contract[ ] is closely related to, even if not the same as, Congress's goal of "efficiency and economy in defense matters."

883 F.2d at 153.[5]

In sum, we conclude that none of the arguments against the plaintiff's standing is sufficient to justify the dismissal of the complaint.  The district court, having concluded that IHS lacked standing, went on to consider the merits of IHS' complaint and to grant summary judgment in favor of the defendants.  Although the district court would have been without jurisdiction to consider the merits had IHS truly lacked standing, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998), because we have concluded that IHS does have standing, we now proceed to consider the court's decision to grant summary judgment.

---

[4] *See also* 32 C.F.R. § 169.4(b), (d) (indicating that the purpose of the regulation is to "Achieve Economy and Quality through Competition" and to encourage DoD components to "Rely on the Commercial Sector" (italics omitted)).

[5] At oral argument, the government raised an additional standing argument.  It contended that IHS' injury could not be traced to DAPS' alleged failure to solicit bids for maintenance of the website because, in fact, DAPS had recently solicited such bids.  IHS, the government said, had simply failed to submit a bid.  The plaintiff responded that DAPS' recent solicitation did not include maintenance and operation of the website.  This is, once again, a factual dispute inappropriate for resolution on the face of the complaint.  Nor, as we note below, does examination of the solicitation itself readily resolve the factual dispute.  *See infra* Part IV.

## IV

We review the district court's grant of summary judgment de novo. *Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647, 650 (D.C. Cir. 2003). Summary judgment is appropriate only if " 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting FED. R. CIV. P. 56(c)). In determining whether a "genuine issue" exists, "we must view the evidence in the light most favorable to [the plaintiff] and draw all reasonable inferences in [its] favor." *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).[6]

In this case, we must also determine whether the dispute was ripe for summary judgment: that is, whether the district court erred in refusing IHS' request, pursuant to Federal Rule of Civil Procedure 56(f), to delay ruling on DAPS' motion for summary judgment until IHS had a chance to take discovery.[7] Summary judgment "ordinarily 'is proper only

---

[6] As with respect to standing, we do not discuss summary judgment issues relating to IHS' claim concerning the development of ASSIST On–Line, since the plaintiff has abandoned that claim on appeal. Those include the district court's determination that "§ 2462(a) and 32 C.F.R. § 169.4 ... did not require DoD to conduct a cost comparison analysis before developing its own ASSIST and ASSIST On–Line systems" because "there is no evidence" that there was "a commercially-available alternative to the programs DoD proposed to develop" at that time. *Information Handling*, slip op. at 6–7. Nor do we consider the court's determination that IHS' claim under § 2328 (the plaintiff's second count) failed because "there is no evidence that when a user obtains documents and forms through ASSIST On–Line, it involves costs to DOD 'attributable to search, duplication, and review,' " *id.* at 8 (quoting 10 U.S.C. § 2328), since IHS has also not appealed the district court's judgment against it on that claim.

[7] Rule 56(f) provides that a court "may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" if it "appear[s] from the affidavits of a party opposing the motion that

after the plaintiff has been given adequate time for discovery.' " *Americable Int'l, Inc. v. Department of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1998) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 477 U.S. at 257. We review the district court's refusal to allow discovery for abuse of discretion. *Paquin v. Federal Nat'l Mortgage Ass'n*, 119 F.3d 23, 28 (D.C. Cir. 1997).

As we have noted above, IHS' claim is based on § 2462 and the relevant DoD procurement regulation. Section 2462(a) declares that the Department "shall procure each supply or service . . . from a source in the private sector if such a source can provide such supply or service to the Department at a cost that is lower . . . than the cost at which the Department can provide the same supply or service," and § 2462(b) requires the Department to make "[r]ealistic and fair cost comparisons" for "the purpose of determining whether to contract with a source in the private sector for the performance of a [DoD] function."[8] IHS' complaint alleges that the "future maintenance of DAPS's [website] require[s] the 'carrying on' of activities designed to provide a commercial product or service," Compl. ¶ 50, that IHS can provide that service at lower cost to the government than DAPS can, *id.* ¶¶ 13, 48, 74, and that DAPS has failed to "prepare any cost comparison study" that would justify retaining the work in-house, *id.* ¶ 51. DAPS does not deny that it continues to expend resources to maintain ASSIST On–Line, nor does it argue that such maintenance falls within the statutory exception for "functions which the Secretary of Defense [has]

the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." FED. R. CIV. P. 56(f).

[8] *See also* 32 C.F.R. § 169.4(b), (d) (providing that DoD components "shall not . . . carry on any [commercial activities] to provide commercial products or services if the products or services can be procured more economically from commercial sources," and requiring those components to conduct a cost comparison "[w]hen performance by a commercial source is permissible").

determine[d] must be performed by military or Government personnel," 10 U.S.C. § 2462(a).[9] Accordingly, on its face IHS' complaint alleges conduct contrary to § 2462 and the Department's regulation, which, if proven, would justify a judgment in its favor. *See* 5 U.S.C. § 706(2)(A).

The district court nonetheless held § 2462 and the DoD regulation inapplicable to IHS' claims because DAPS "is not procuring supplies or services in connection with . . . ASSIST On–Line," but is instead "making its own forms and documents, which have long been available to the public, available through the Internet." *Information Handling*, slip op. at 7. As we noted in our discussion of standing, this is a variant on the government's argument that § 2462 only applies when DAPS takes in-house a service that it had previously contracted out to the private sector, or when it institutes a new service. According to the government, "DAPS never had an agreement with any contractor to provide DoD specifications and standards on the internet." DAPS Br. at 26. Rather, "it was DAPS' historic mission to provide such information to DoD components and others." *Id.* And because the operation of the website assertedly represents only a continuation of DAPS' historical function, rather than a decision to bring an existing service in-house or to create a new service, the government argues that DAPS was not obligated to consider outsourcing to the private sector.

This argument fails to justify a grant of summary judgment on either the law or the facts. First, nothing in the language of § 2462 suggests that it applies only to functions that the Department had previously contracted out to the private sector, or to entirely new functions. Rather, the statute applies to "*each* supply or service necessary for or beneficial to the accomplishment of the authorized functions" of the Department. 10 U.S.C. § 2462(a) (emphasis added). Simi-

---

[9] The government also does not contend that DAPS' activities fall within any of the regulatory exceptions. *See* 32 C.F.R. § 169.4(d) (providing exceptions "when required for national defense, when no satisfactory commercial source is available, or when in the best interest of direct patient care").

larly, the Department's regulation states that conversion to in-house production or the creation of a new in-house service are only *two* of the events that can trigger the cost comparison requirement: "DoD Components shall not consider an in-house new requirement, an expansion of an in-house requirement, conversion to in-house, *or otherwise carry on any [commercial activities] to provide commercial products or services* if the products or services can be procured more economically from commercial sources." 32 C.F.R. § 169.4(d) (emphasis added). Indeed, a DAPS position paper on Do-DISS states: "All DoD activities annually review their core capabilities and identify functions for possible cost comparisons with private industry. When such studies are conducted and a determination is made that a particular service may be more appropriately performed by the private sector, . . . a solicitation is advertised [and] a competitive selection is awarded." DAPS, DoDISS Documents On–Line, Proposed Questions and Answers ¶ 9 (Sept. 21, 1998) (J.A. at 29) [hereinafter "DAPS, Questions and Answers"].

Second, even if § 2462 does apply only to services that DAPS had previously procured from the private sector or that are entirely new, IHS has raised a genuine factual dispute as to DAPS' claim that its services fall into neither category. With respect to previous procurement, IHS contends that "[f]or many years prior to defendants' rollout of its electronic military standards product on October 1, 1998, defendants had been purchasing a comparable product from IHS." Reply Br. at 4. Specifically, IHS asserts that during the 1990s, DoD components purchased CD–ROMs and Internet-based products from IHS that enabled them to conduct desktop computer searches and retrieve full-text versions of DoDISS documents. *See* Compl. ¶¶ 22–23; Pace Decl. ¶¶ 5, 11, 16 (Apr. 20, 1999) (J.A. at 274–76).

Moreover, the government's contention that DAPS is merely carrying out its long-standing function of disseminating DoDISS documents, while arguably correct when stated at a high level of generality, obscures the fact that the way in which DAPS carries out that function has changed dramatically. DAPS cannot dispute that it "historically distributed

only paper copies of DoDISS documents," and that it was not until 1996 that "selected documents were also made available in electronic format on diskettes or CD–ROMs." DAPS, Questions and Answers ¶ 14 (J.A. at 30). Dissemination of DoDISS documents through the Internet did not begin until DAPS' website went active on October 1, 1998, *see* Saunders Decl. (Dec. 4, 1998) (J.A. at 156), just weeks before IHS brought suit. We cannot agree that providing for the retrieval of documents in electronic format over the Internet is not a new service as compared to the manual retrieval of hard copy from government warehouses.

As an alternative ground in support of the district court's grant of summary judgment, the government argues that application of § 2462 to ASSIST On–Line would conflict with a provision of the Electronic Freedom of Information Act Amendments of 1996, which requires the Department to make "records created on or after November 1, 1996 . . . available, including by computer telecommunications." 5 U.S.C. § 552(a)(2). DAPS similarly cites the Paperwork Reduction Act's mandate that agencies provide "timely and equitable access to the [data] underlying" public information "maintained in electronic format." 44 U.S.C. § 3506(d)(1)(B). But there is no conflict between the requirement that DAPS make DoDISS documents available over the Internet, and the requirement that it do so by contracting the function out to the private sector if that would be more economical.

The government further argues that, even if § 2462 and the Department's regulation apply, the agency has fully complied with their mandates. According to the government, DAPS has contracted out "the great majority of [the] work" of developing, operating, and maintaining ASSIST On–Line "to other private vendors." DAPS Br. at 23. At oral argument, government counsel further contended that DAPS had published a request for proposals (RFP) on March 30, 2001, seeking private-sector firms to take over all of DAPS' remaining responsibilities associated with the website, and that IHS failed to submit a proposal.

Counsel for IHS conceded that the company would have no claim under § 2462 or the relevant regulation if the operation and maintenance work were already being done by other private firms. And DAPS may well have provided IHS all the relief the company sought if, in fact, the March 2001 RFP encompassed all of DAPS' remaining responsibilities regarding ASSIST On–Line. IHS contends, however, that there are genuine issues of material fact as to both questions, and we agree. As to the former, the government itself concedes that "DAPS performs the day-to-day operations and minor adjustments to the Website, such as entering new and revised documents into the database, managing customer accounts, and other administrative functions." DAPS Br. at 7 (citing Saunders Decl. (Feb. 25, 1999) (J.A. at 168)). As to the latter, IHS contends that, contrary to the government's assertion, the March 2001 solicitation did not cover the maintenance and operation of the website — a dispute that we cannot resolve by unaided examination of the abstruse language of the RFP itself. *See* J.A. at 347–93 (DAPS RFP).

This is not to say that further proceedings in the district court could not both clarify and resolve the question of whether there truly are disputed issues of fact on these points. But further discovery is plainly required before that can be done. And while IHS requested discovery of "all . . . documents relating to the . . . maintenance[ ] and marketing of" ASSIST On–Line, citing its inability to determine which work concerning the website was "retained in-house by defendants," Pl.'s Supp'l Mem. in Opp'n to Defs.' Mot. to Dismiss at 7–8 (J.A. at 323–24), the district court granted summary judgment without permitting such discovery, *Information Handling*, slip op. at 7 n.4. As a result, there is no evidence in the record as to which services DAPS currently provides in-house in support of ASSIST On–Line, and no underlying documents that might clarify the nature of the March 2001 solicitation. As we said in *Americable*, a procurement case presenting issues similar to those presented here:

> If the Navy is correct, there may well be no genuine
> issue of material fact with respect to the applicability of

§ 2462 to this case.... Unfortunately, neither we nor the district court are in a position to decide as a matter of law whether there is a genuine dispute here because the district court did not permit Americable any discovery before issuing its ruling.... As a consequence, there is no evidence in the record as to who will perform those functions that may be necessary to "operate" and "maintain" the new system and any inferences that exist must be construed in the appellant's favor. Under these circumstances, it was inappropriate for the district court to grant summary judgment without first giving Americable a chance to conduct discovery....

129 F.3d at 1274 (internal quotation marks, citations, and paragraph break omitted).

Finally, we reach a similar conclusion with respect to DAPS' repeated suggestion that IHS is incapable of providing the same services that ASSIST On–Line provides, or, at the very least, incapable of providing them at lower cost to the government. If DAPS is right on either charge, then it will, of course, prevail: § 2462 requires Department components to procure a service from a source in the private sector only if such source can provide the "same" service at "a cost that is lower." 10 U.S.C. § 2462(a). But IHS offered affidavit evidence that it can do both,[10] and sought discovery from the

---

[10] IHS' Vice President, John Pace, filed a sworn declaration based on his personal knowledge, averring that the allegations of the complaint were true and correct. Pace Decl. (Nov. 12, 1998) (J.A. at 48). Those included allegations that the services offered by DAPS "are now available ... from IHS and other commercial sources" at "lower than the cost at which defendants can provide such products and services," Compl. ¶ 13, and that "IHS' DoDISS Plus Index products and services are a 'commercially available source' of essentially the same products and services as offered in" ASSIST On–Line, *id.* ¶ 48. *See also* Pl.'s Supp'l Mem. in Supp. of T.R.O. at 7; Pace Decl. (Nov. 24, 1998) (J.A. at 145).

government in order further to make its case — particularly on the cost to the government of providing the service. *See* Pl.'s Supp'l Mem. in Opp'n to Defs.' Mot. to Dismiss at 2 (J.A. at 318). Therefore, these questions, too, involve disputed issues of material fact. And to the extent there is any doubt about the genuineness of those disputes, it cannot be resolved until IHS is "given adequate time for discovery." *Americable*, 129 F.3d at 1274 (internal quotation marks omitted).

## V

For the foregoing reasons, we reverse the district court's grant of DAPS' motions to dismiss and for summary judgment, and we remand for further proceedings consistent with this opinion.

*So ordered.*